CHARLES W. TROTTER

v.

CHARLES A. HECKSCHER and THE LEHIGH ZINC AND IRON COMPANY, LIMITED.

Trotter held a lease of a mine for a term of thirty years. He agreed with Heckscher and his assigns to furnish ore therefrom to him or them in certain quantities monthly, and in case of his *failure* so to do, he or they might enter and secure the ore, charging Trotter with all costs, until Trotter's *inability* or *failure* should be satisfactorily removed. Trotter failed to deliver ore; Heckscher and his assigns threatened to enter; Trotter filed a bill to enjoin them and for an account; the court let Heckscher and his assigns into possession; now Trotter files supplemental bill, and asks to be restored to possession, alleging that he can now furnish ore under the contract; he also asks for an account for waste, and for a manager; defendants insist that Trotter forfeited his right to re-enter, by his misconduct and bad faith, and also insist that this court has not jurisdiction.—*Held*, that Trotter is entitled to the possession, no bad faith appearing; *held, also*, that he is not entitled to an account for waste, nor to a manager; and *held*, that this court has jurisdiction.

*Messrs. C. & R. Wayne Parker*, for complainant.

*Mr. C. D. Thompson, Mr. H. C. Pitney*, and *Mr. George Northrop* (of Philadelphia), for defendants.

BIRD, V. C.

The question now presented for consideration arises upon a bill supplemental to one filed in May, 1882. That bill was filed, amongst other things, to restrain the defendants from taking possession of a certain mine named in the pleadings. On appeal, the court of last resort decided that the defendants were entitled

to possession of the mine. The right to such possession, and the ground upon which it was given, was a clause in a contract between the parties to the effect that if Trotter should *fail* for thirty days, at any time during the continuance of said contract, to deliver ore from said mine according to the quantity agreed upon, the said Heckscher might, at his option, after thirty days' notice, take possession of the mine and all machinery, and should have the uninterrupted right of entering upon the said premises and taking therefrom the amount of ore which Trotter agreed to deliver, charging Trotter with the cost of mining and delivering. The decree of the court of errors, besides providing that the defendants were entitled to possession of said mine, declared that their decree should be " without prejudice to an inquiry, after the said The Lehigh Zinc and Iron Company, Limited, should have taken such possession, into any change of the right of possession from matters arising after the bill was filed." On May 6th, 1886, the defendants took possession of the mine, as they had a right to do, under said decree. The complainant immediately demanded possession to be redelivered to him.

This claim, for the present right of possession of the mine by Trotter, arises, not only under said decree, but also under the contract between the parties which, among other things, provides, in addition to the provision that the defendants may take possession, in case Trotter shall fail to deliver ore, that " the said Charles W. Trotter, for himself, his heirs, executors, administrators and assigns, guarantees that the said Charles A. Heckscher, his associates, executors, administrators and assigns, shall have peaceable and uninterrupted possession of said mine, vein, lode, or bed of franklinite ore, until the inability or failure of the said Charles W. Trotter to supply said ore, as agreed upon, shall be satisfactorily removed." The supplemental bill alleges that said inability of Trotter has been removed, and that he is now able to supply said ore according to the stipulations of his contract. It also presents a claim against the defendants for waste committed by them in the management of said mine, since they have had the possession.

The answer denies that the defendants are entitled to the pos-

session of the mine only so long as the complainant may, or might be unable to fulfill his contract, or that defendants are under any obligation to return and give up possession to the complainant as soon as the complainant's so-called inability or failure to supply said ore, as agreed upon, shall be removed. As a question of fact, and independent of every other consideration, the defendants admit that the inability of Trotter to furnish the ores has been removed; and further say "that the complainant has lost his right of possession, and working said mine, under said contract, not by reason of any actual physical inability on the part of the complainant to furnish the quantities and quality of ore required by the contract, but from a willful and deliberate failure and refusal to deliver any ore, at a time when there was no physical disability whatever existing to prevent it," and insist that the decree of the court awarding the possession to the defendants was founded upon such deliberate refusal, and not upon mere inability.    The charge of waste is denied, and, on the contrary, it is insisted that the method of mining has been materially improved, and the expense thereof greatly reduced. Besides the claim for possession and the charge of waste, the complainant asks for the appointment of a manager.

First. Is the complainant entitled to the possession of the mine, or has he forfeited all right thereto by some inequitable or unconscionable act?   Trotter ceased to deliver ore in May, 1882, not because he had not the means, or was in any sense physically unable, but because the defendants refused to pay him over $30,000 which he insisted was then due upon the contract for ores already delivered.   The original bill, besides asking for an injunction against the defendants, prayed for an accounting. There was an account taken, but instead of Trotter recovering over $30,000, there was found to be due to him only $5,793.71 at the time he refused to deliver ore.   Was it inequitable for him to refuse to deliver ore under the contract so long as defendants refused to pay under the contract?   There was no offer to pay the $5,793.71 found to be due by the court until after the decree.

In determining whether or not Trotter has forfeited his right

to manage the mine himself under the contract, a few of the principal facts must be kept before the mind. Trotter was a resident of New York; he was the owner of a lease of this mine, embracing a term of thirty years. He was under obligations to his lessors, and accountable to them for the profits of the mine by way of rental. It was most natural for him to insist upon just compensation according to the contract; presumably that had been provided for, and equitably it might be insisted upon.

The defendants resided in Pennsylvania. They were without the jurisdiction of the state of New York, where Trotter resided, and of the state of New Jersey, the place where the mine is located, and where all the mining operations were carried on by Trotter. The consideration-money was to be paid on the 15th day of each month for all the ores delivered during the month immediately preceding, so that the refusal to pay, on the part of the defendants, did not arise from any surprise, for by the contract they had ample time therefor. Their refusal to pay was as deliberate as the refusal of Trotter to deliver ore. While at first the defendants only made the assays, upon the basis of which the payments were made, after a short time the complainant, becoming dissatisfied with the results of defendants' work, began to take samples and to make assays, the result of which tended to show that the ore was vastly richer than the assays of the defendants proved to be. The difference in value of a given quantity then unpaid for was as the difference between $5,000 and $30,000. This resulted in the disagreement respecting the amount due. Trotter insisted that the defendants made erroneous assays, and he claimed, as stated, that there were over $30,000 due him, which the defendants absolutely refused to acknowledge. The one refused to pay and the other to deliver.

There was no inability upon the part of Trotter, either to produce or to deliver the ore. The contract provides that if Trotter shall *fail*, that Heckscher may take possession. In the same paragraph, but in a different sentence, Trotter guarantees that Heckscher shall have peaceable and uninterrupted possession until the *inability or failure* of Trotter to supply ore shall be satisfactorily removed. It will be perceived that Trotter's fail-

17

ure to deliver ore arose, not from inability, but from a mere naked refusal. Did this work a forfeiture of Trotter's right to conduct these mining operations? In other words, should a court of equity say that it was his duty to deliver ores according to the contract, notwithstanding the defendants refused to pay according thereto, and that he must rely upon his action at law for the amount due, or for damages for any breach? I think the general rule at law goes to this length; see *Blackburn* v. *Reilly, 18 Vr. 290,* in which case the court of errors and appeals declares that " in contracts for sales of goods, to be executed by a series of deliveries and payments, defaults of either party, with reference to one or more of the stipulated acts, will not ordinarily discharge the other party from his obligation, unless the conduct of the party in the fault be such as to evince an *intention to abandon the contract or a design no longer to be* bound by its terms." A forfeiture often results in case of a breach of contract, from the enforcement of the strict rules of law. There may be forfeitures in equity, or what is equivalent thereto, in many cases, a party may be estopped by his conduct from setting up a claim or a right which otherwise would be regarded as highly equitable.

I do not think that either a forfeiture or an estoppel has arisen. It seems to me that Trotter has not been guilty of any breach, either at law or in equity. He failed to deliver ore, and the contract provided for such failure. Nothing whatever is said or intimated in the first provision of the paragraph referred to about causes for such failure. Being under only such obligations, Trotter said to the defendants, in effect, " I am ready and willing to perform this contract if you are." It is true Trotter demanded more than was due, but it is equally true that the defendants neither paid nor tendered the amount that was due; so the responsibility for the first refusal did not rest entirely with Trotter. Trotter did not abandon the contract, nor is there any evidence of any purpose on his part to rid himself of its obligations except by honestly discharging them. On the contrary, I find that he immediately filed the original bill in this cause, and sought the aid of this court in his endeavors to comply with

Trotter *v.* Heckscher.

his legal obligations, submitting himself to the directions of the court in that behalf. His bill shows that there were, indeed, serious disagreements between the contracting parties; and this will more satisfactorily appear by an examination of the opinion of the court of errors and appeals, *supra.* The answer and cross-bill show that the differences between the parties had become so many and so aggravated, by repeated altercations, that a mutual settlement seemed impossible. Amongst other things, the complainant asked for the money due to him on his contract; the defendants asked, amongst other things, for the possession of the mine; the court awarded Trotter over $5,000, but gave the possession of the mine to the defendants.

But, supposing Trotter to have been guilty of a breach, it by no means follows that, because the court gave him the consideration for his ore and the defendants the possession, it intended to apply the doctrine of forfeiture, nor did it declare that either party was estopped.

It is my judgment that, when a contract, which expressly provides that in case one party fails to perform such contract, the other party may perform it for him and charge him with the costs, also provides that he may continue such performance until the failure or inability of the other contracting party shall be satisfactorily removed, such failure does not amount to a forfeiture nor work an estoppel, unless bad faith be clearly shown. There was no intention, when the contract was entered into, that Trotter's failure to mine and deliver ores should terminate his right to mine. Indeed, the contrary is to be inferred, most plainly, from the contract. This view of the case seems to me conclusively against the contention of the defendants. Beyond doubt, the defendants understood this contract as the court now does; for what is now urged with the greatest amount of learning and elaboration was not heard of until the filing of the answer to this supplemental bill, although the original answer and cross-bill had been filed four years before.

Secondly. As to the claim for waste, is there any substantial merit in it? I think not. When all the facts are considered, I cannot conclude that Trotter has been at all injured, in a sense

Trotter *v.* Heckscher.

of injury arising from a breach of contract. Trotter says that he has suffered loss in that defendants mined and shipped ore altogether too far below in value that contemplated by the contract, thereby greatly diminishing his receipts, since he is entitled to $3.75 per ton for all ores yielding twenty-six per cent. of the oxide of zinc, and fifty cents for every additional per cent. or fractional part thereof above twenty-six. The testimony shows that such ore as the complainant condemns was shipped by the defendants. And I think that the contract does not, in any sense, contemplate that the traffic between the parties shall be carried on in such ores. The contract expressly provides that it shall be at the option of defendants to accept of ore assaying less than twenty-six per cent. Hence, to deliberately take some ore very rich, say containing thirty-five per cent. of zinc, and a like quantity of material containing only twenty per cent. or less, in order, by mixing, to bring down the price of the good ore from $8.75 to $3.75, would be a palpable violation of the plain spirit and meaning of the contract, and a very gross fraud on the complainant; but, nevertheless, the contract itself makes it very clear that the parties considered the possibility of Trotter shipping ores containing less than twenty-six per cent. of zinc; and certainly, if he might perchance do so, it is not unlikely the defendants might do likewise. Therefore, unless it appears that the defendants intended to violate the spirit and meaning of the contract, either by direct proof or a course of practice in mining leading to that end, they cannot be charged with waste. Whilst there has been some such ore shipped by the defendants since they have had possession, neither of the conditions which I think requisite to hold them has been established.

Again, it is claimed that great waste has been committed in the general management of the mine by the defendants; that is, in abandoning one or more shafts which had been sunk and used by Trotter; in sinking one of them several feet deeper than was necessary for proper developments, and then allowing it to fill with water; in weakening pillars necessary for the support of overhanging walls; in not making necessary develop-

ments to insure successful mining; in robbing stopes of rich ore which had been reserved for unexpected emergencies.

The affidavits submitted on either side cannot be read without observing that the method pursued by the defendants is, in many particulars, quite different from the one pursued by Trotter. Which method is the better is earnestly disputed. Experts of the highest character have been sworn on both sides. I find no reason whatever to question either their ability, or their integrity, or that each one had a full opportunity to know all that was necessary of this mine to speak intelligently. There is no decided preponderance of testimony on either side. I certainly cannot make up my mind that such preponderance is with the complainant, on whom rests the burden. Like so many of the affairs of the business world, the better way to manage this mine seems to be open to dispute; and, as is often the case in other pursuits, different methods produce equally favorable results. I think the charge of waste has not been sustained.

The complainant asks for the appointment of a manager, with power to superintend and control all these mining operations under the directions of the court. I am not disposed to look upon this prayer with favor. Above all, it seems to me that, in the attitude which the decree already foreshadowed will leave the complainant, he will be in no position to insist on this prayer. Indeed, I think he ought not to ask it. It strikes me, with no little force, that it is a confession of unfortunate weakness, and of inability to carry out the contract on his part which he has made. Why should he come in and ask the interference of this court, from day to day, in these mining operations under his contract? He has contracted to do the work. And the contract provides that if he fails, the other party may take possession and do the work, charging all costs to Trotter, without any change in the consideration paid for the ore. Just the condition expressed in the contract and provided for has already arisen and is now before us. The defendant has been trying its hand at mining, and the complainant is very much dissatisfied with the experiment. Now it is proposed to let the complainant try again. Why not let him try fully and without interruption, in

Trotter *v.* Heckscher.

the spirit of the contract? Why should the court doubt his ability? Why should he suggest so grave a doubt of his own ability, when, with the same breath, he asks that the defendants may be turned out? Let him try again. And until the other side comes and shows injury to itself by the complainant's inability or failure, the court will hesitate long, and be sure of an extraordinary case, before it interferes.

The defendant's counsel raised a question of jurisdiction, insisting that this court had no power to turn one citizen out of possession, and to put another in, claiming that the issues, in such cases, can only be tried by actions of ejectment before a jury. No doubt has crossed my mind as to the power of this court to proceed with this case. It is not a new suit by way of ejectment. The suit was instituted for other and for different purposes. It was instituted to retain the possession by the complainant as against the defendants, and for an account. With those ends in view, it has been progressing for more than four years. The defendants came in by answer and by cross-bill. The court has made many orders, and one or more, I think, at the instance of the defendants. At length came the final decree, after a hearing, and great consideration in the court of errors and appeals, under which the defendants went into possession. And now comes this supplemental bill, by which is raised the issue whether the complainant is not, at this time, entitled to the possession.

It is quite plain that this court has jurisdiction; it is quite plain that for it to proceed is no assumption. It is according to the practice of the court, in making effectual its final decrees. Such practice, in this case, would not be unlike the practice of awarding writs of assistance in many foreclosure cases, or like enforcing its decrees in cases of specific performance. In this case the court of errors and appeals said that the decree awarding to defendants possession should not prejudice the right of Trotter to make inquiry as to his rights to be let in. I can conceive of no grounds for thinking that that tribunal intended to turn these parties over to another tribunal; that all of the questions involved in this branch of the controversy should be heard anew.

I think the complainant is entitled to the possession of the mine, but not to an account for waste, nor to a manager; he is entitled to costs.